UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:12-CV-180-GNS

SELECTIVE INSURANCE COMPANY
OF SOUTH CAROLINA                                                                            PLAINTIFF

v.

DAVIDA D. SULLIVAN; CURTIS SULLIVAN;
SHARON SULLIVAN; and OMNI CUSTOM MEATS, INC.                         DEFENDANTS

and

JAMES BLAKE                                                                                            INTERVENOR

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Motion for Summary Judgment filed by Plaintiff Selective Insurance Company of South Carolina ("Selective") (DN 63), and the Motion for Partial Summary Judgment filed by Intervenor James Blake ("Blake") (DN 69). The motions have been fully briefed and are ripe for decision. For the reasons stated below, Selective's motion is **GRANTED**, and Blake's motion is **DENIED**.

### I.   STATEMENT OF FACTS AND CLAIMS

Selective seeks a declaration that none of the three policies require it to indemnify or defend Davida Sullivan ("Davida") for any liability resulting from a pending lawsuit in California. Despite a recent settlement agreement (Intervenor's Mot. for Partial Summ. J. Ex. 11, DN 69-12), Selective seeks a similar declaration regarding Davida's parents, Curtis and Sharon Sullivan ("Curtis" and "Sharon") and their company, Omni Custom Meats, Inc. ("Omni"). Blake seeks a declaration Davida is covered under the Selective Policy.

1

In the California lawsuit, Blake seeks recompense for injuries he sustained in an automobile accident for which Davida was purportedly at fault. Davida's injuries from this accident have left her with no memory of the accident and unable to testify in these proceedings. (C. Sullivan Dep.14:13-16:5, Aug. 13, 2013, DN 63-2). The material facts surrounding the accident as pertains to this case, however, are not disputed. On May 9, 2011, Davida was driving a 1999 Mercedes sedan ("Mercedes") registered in the name of her parents. (Accident Report, DN 63-9). While turning across several lanes of oncoming traffic into a shopping center, Davida collided with Blake's vehicle. As part of a settlement agreement, Blake released Curtis, Sharon, and Omni from any liability resulting from the lawsuit. (Pl.'s Mot. for Summ. J. Ex. K, DN 63-12). That agreement expressly retained Blake's claims against Davida. Blake's interests herein, therefore, are that Davida retain insurance coverage for the accident.

Blake maintains that Davida is covered under a Selective insurance policy issued to Omni. That policy was a business insurance policy that included automobile coverage. When issued in June 2007, the policy expressly covered four vehicles with two drivers, Curtis and Sharon. (Pl.'s Mot. for Summ. J. Ex. C, DN 63-4). Of the listed vehicles, two were identified as garaged in Kentucky. and the garage locations of the other two cars were unspecified. The Mercedes was not among the automobiles listed. (Pl.'s Mot. for Summ. J. Ex. C). The Mercedes was added to the policy in December 2007 along with another vehicle, though garage locations were not specified for either additional vehicle. (Pl.'s Mot. for Summ. J. Ex. D, DN 63-5). The policy was renewed in 2008. (Pl.'s Mot. for Summ. J. Ex. E, DN 63-6). While an updated drivers list was requested, no new drivers were added to the policy.

Davida lived in California and began driving the Mercedes in approximately 2009. (C. Sullivan Dep.27:7-9). Selective was never advised of the change in drivers, or of Davida's

checkered driving record. (Reqs. for Admis. 9-10, DN 13). Prior to January 2011, Davida worked full-time performing back office work for her parents' Kentucky company out of her California home. (C. Sullivan Dep.11:16-21, 16:21-23). Between that January and the time of the accident, Davida began a business selling jewelry and clothing. (C. Sullivan Dep. 17:11-21). As part of a severance package, Omni provided Davida with auto, health, and dental insurance, and the use of the Mercedes. (C. Sullivan Dep.20:10-21:8).

## II. JURISDICTION

Selective is an Indiana corporation with a principal place of business in New Jersey. (Compl. ¶ 1, DN 1). Omni is a Kentucky corporation with its principal place of business in Kentucky. (Compl. ¶ 2). Selective asserts Curtis and Sharon are Kentucky citizens, while Davida and Blake are California citizens. (Compl. ¶¶ 3, 4). The parties are completely diverse, and this Court may exercise diversity jurisdiction. *See* 28 U.S.C. § 1332.

## III. STANDARD

The Court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Parties may show the absence of factual disputes by citing "depositions, documents, electronically stored information, affidavits or information, . . . or other materials . . . ." Fed. R. Civ. P. 56(c)(1)(A). While only cited material need be considered, the Court is free to reference all material in the record. Fed. R. Civ. P. 56(c)(3). "A factual dispute concerns a 'material' fact only if its resolution might affect the outcome of the suit under the governing substantive law." *Crouch v. Honeywell Int'l*, 720 F.3d 333, 338 (6th Cir. 2013) (citation omitted).

## IV. DISCUSSION

The parties' motions seek the Court's construction of an insurance contract. Selective seeks a declaration that no coverage is available to Davida, Curtis, or Sharon under three different insurance policies provided to Omni: a commercial general Liability ("CGL") policy, a business automobile policy ("BA"), and a commercial umbrella ("CU") policy. Blake seeks a declaration that the BA Policy covers Davida. As coverage under the CGL policy is uncontested and relatively straightforward, it will be addressed first. Identical definitions of insureds in the CU policy and BA policy (*see* Compl. Ex. A at 178-80, 253, DN 1-1), make the coverage analysis under the CU policy identical to the analysis for BA. Additionally, because the Court's construction of the term "borrow" is dispositive of both Davida and Omni's coverage, they are analyzed concurrently.

Both parties agree Kentucky law governs the insurance policies. Under Kentucky law, the "construction and legal effect of an insurance contract is a matter of law for the court." *Bituminous Cas. Corp. v. Kenway Contracting, Inc.*, 240 S.W.3d 633, 638 (Ky. 2007) (citation omitted). To effect broad insurance coverage in Kentucky, ambiguous policy language is construed against the drafter. *Id.* "The rule of strict construction against an insurance company certainly does not mean that every doubt must be resolved against it and does not interfere with the rule that the policy must receive a reasonable interpretation . . . ." *St. Paul Fire & Marine Ins. Co. v. Powell-Walton-Milward, Inc.*, 870 S.W.2d 223, 226 (Ky. 1994). When policy language is not ambiguous, "the ordinary meaning of the words chosen by the insurer is to be followed." *Bituminous Cas. Corp.*, 240 S.W.3d at 638 (citation omitted) (internal quotation marks omitted). Courts are not given free rein to rewrite insurance policies to expand coverage. *St. Paul Fire &*

*Marine Ins. Co.*, 870 S.W.2d at 226-27 (citing *U.S. Fid. & Guar. Co. v. Star Fire Coals, Inc.*, 856 F.2d 31 (6th Cir. 1988)).

A. **Commercial General Liability Policy**

Blake makes no argument that the CGL policy provides insurance coverage to the Sullivans in the California action. While the CGL policy covers "bodily injury" and "property damage" the "insured becomes legally obligated to pay," the policy specifically excludes injury or damage "arising out of the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' . . . ." (Compl. Ex. A at 148). The CGL policy does not cover the Sullivans or Omni for any liability arising out of the automobile accident in California.

B. **Business Auto Policy**

With the CGL policy uncontested, the gravamen of the declaratory action is coverage under Omni's BA policy. Under that policy, liability coverage is provided for insureds for covered autos. (Compl. Ex. A at 179). Thus, coverage depends on Davida, Curtis, and Sharon being included among those "insured" and the automobile at issue being a "covered auto." The Mercedes was added to the policy by endorsement in 2007 and its status as a "covered auto" is uncontested. (Pl's Mot. for Summ. J. Ex. D, DN 63-5).

1. *Curtis and Sharon Sullivan*

Curtis and Sharon are not insureds under Omni's BA policy. The policy provides coverage for anyone "while using with your permission a covered 'auto' you own, hire or borrow except: (1) The owner or anyone else from whom you[1] hire or borrow a covered 'auto'. . . ." (Compl. Ex. A, Page ID 187-88). Sharon and Curtis are the registered owners of the Mercedes.

---

[1] "You" and "your" under the policy refer to Omni as the named insured. (Compl. Ex. A at 178).

(Pl.'s Mot. for Summ. J. Ex. I, DN 63-10). As owners, the policy unambiguously excepts both from insured status. Accordingly, the policy affords them no liability coverage arising from the accident.

### 2. *Davida Sullivan*

Under this same provision, Blake contends Davida qualifies as an insured. Blake contends that Davida was an "insured" because she was given permission to use the auto and Omni "own[ed], hire[d] or borrow[ed]" the Mercedes. According to Blake, Omni can be said to have "borrowed" the vehicle because it benefited from its use in "provid[ing] it another vehicle to transport those associated with the company." (Intervenor's Mot. for Partial Summ. J. 21, DN 69). Both parties agree Davida had permission to use the vehicle.[2] Blake contends that one possible interpretation of the term "borrow" is that the borrower (here, Omni) receive a benefit from that which was borrowed.[3] In contrast, more traditional definitions usually require physical possession or control of the borrowed item. Thus, Blake asserts that on the night of the accident, Omni was receiving a benefit from the vehicle because it was being used as part of an "ongoing severance package." (Intervenor's Resp. to Pl.'s Mot. for Summ. J. 21, DN 67). Blake reasons

---

[2] Curtis, as President of Omni, testified Davida had permission to use the vehicle. (C. Sullivan Dep. 20:23-21:8). Blake argues the initial permission doctrine also supports his definition of "borrow." The initial permission doctrine is the "standard for determining whether a non-owner's use of a vehicle exceeds the scope of permission given to that person." *Mitchell v. Allstate Ins. Co.*, 244 S.W.3d 59, 65 (Ky. 2008). Since Davida's permission to use the vehicle is not at issue, the doctrine is inapplicable.

[3] Merriam-Webster provides a few definitions: 1a. "to receive with the implied or expressed intention of returning the same or an equivalent[,]" 1b. "to borrow (money) with the intention of returning the same plus interest[,]" and 2. "to appropriate for one's own use . . . ." Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/borrow. *Black's Law Dictionary* provides two definitions: "1. To take something for temporary use. 2. To receive money with the understanding or agreement that it must be repaid, usu. with interest." *Black's Law Dictionary* (10th ed. 2014).

that Davida is covered because she was given permission to use the vehicle Omni borrowed from Sharon and Curtis. The principal question before the Court, then, is whether Omni can be said to have borrowed the Mercedes on the night of the accident.

Blake's definition of "borrow" is a broad construction that the California Court of Appeals devised in *Travelers Indem. Co. v. Swearinger*, 214 Cal. Rptr. 383 (Cal. Ct. App. 1985). In *Swearinger*, the Court found the term "borrow" ambiguous in the insurance contract, and noted ambiguities were to be resolved in favor of the insured. *Id.* at 385. The Court then examined what it considered to be two reasonable lay interpretations of the term borrow. The school district had borrowed a vehicle, the Court said, because the vehicle was being used by a third party (neither the borrower or lender) to confer a benefit on borrower (the named insured). *See id.* at 385-88. The Court found a traditional definition of borrow—requiring the lender to give up physical possession of the vehicle, and the borrower to exercise "dominion and control" over it—was not the only reasonable one. *Id.* at 385. The named insured school district benefited in the use of the vehicle because the vehicle was transporting visiting students. Therefore, it had borrowed the vehicle under the policy. By analogy, Blake contends that the Mercedes was used by a third party (Davida) to provide a benefit to Omni. Omni benefited from that use because it enabled the provision of a severance package to Davida that included auto insurance. Therefore, Blake asserts, Omni borrowed the Mercedes from Curtis and Sharon at the time of the accident.

The *Swearinger* court's definition of borrow has become a minority view. *Schroeder v. Bd. of Supervisors of La. State Univ.*, 591 So. 2d 342, 347 (La. 1991). As that court explained, "a person uses his auto to pick up a prescription for a sick friend, he may confer a significant benefit on the invalid, but no one would say that the bedridden friend had borrowed the auto used for the errand." *Id.* at 346. Subsequently, some California courts have drawn a distinction

7

between "exclusive use for the insured's purposes and non-exclusive use for the [borrower's] purposes . . . ." *Travelers Prop. Cas. Co. of Am. v. LK Transp., Inc.*, 3 F. Supp. 3d 799, 805 (E.D. Cal. 2014) (discussing California state precedent) (appeal pending). Other California courts have rejected the *Swearinger* definition. *Am. Int'l Underwriters Ins. Co. v. Am. Guarantee & Liab. Ins. Co.*, 105 Cal. Rptr. 3d 64, 73 (2010) ("[T]he *Swearinger* decision is based on an inadequate definition of 'borrow . . . .'"). A court in the Eastern District of Kentucky concluded that the plaintiff in that case met neither the *Swearinger* definition of "borrow" nor a definition requiring physical control/dominion of a vehicle. *See Westfield Ins. Co. v. Young*, No. 11-275-JBC, 2012 WL 5421145 (E.D. Ky. Nov. 6, 2012). Distilling this precedent, the *Swearinger* decision has been interpreted to have rejected the idea that dominion and control of a vehicle requires physical possession, not that a secondary beneficiary's use might always benefit the insured. *Accord City of Los Angeles v. Allianz Ins. Co.*, 22 Cal. Rptr. 3d 716, 722 (Cal. Ct. App. 2004) ("[I]t was the use of the vehicle for the school district's purposes that constituted the district's exercise of dominion and control over the vehicle.").

Under neither a traditional understanding of "dominion and control" nor the *Swearinger* Court's interpretation could Omni be said to have been exercising dominion and control over the Mercedes at the time of the accident. Blake does not argue that Omni exercised any sort of physical control of the vehicle or that Omni was directing its use. Curtis stated in his deposition that Davida left Omni's employ in January 2011 and was provided permission to use the Mercedes and auto insurance as part of her severance package. (C. Sullivan Dep. 16:21-23, 20:10-21:13). The primary beneficiary was Davida, who used the vehicle for personal use. At the time of the accident, Davida was going to a shopping center near her home. (C. Sullivan Dep.

42:3-6). To the extent Omni was a beneficiary of the vehicle's use, purportedly as a component of a severance package it offered, it was certainly not the primary beneficiary.

Present in all these previously cited cases was the temporary nature of the borrower's benefit or use. The *Swearinger* benefit definition of "borrow" was based on the dictionary definition "to make temporary use of (something not one's own)." *Swearinger*, 214 Cal. Rptr. at 386 (citing *The Oxford English Dictionary* 1006 (1978)). Here, however, there is no indication Davida's use of the Mercedes was anything other than indefinite or that the severance package including the Mercedes had an end date. Instead, Davida's parents had generously provided their car to her for her personal use. Under these circumstances, it cannot be reasonably concluded that Omni had "borrowed" the vehicle within the meaning of the Selective Policy at the time of the accident. Consequently, the Mercedes Davida was driving at the time of the accident was not covered by the express policy provisions.

### C. Reasonable Expectations Doctrine

Blake argues that given Kentucky's instruction to liberally construe insurance policies in favor of the insured, broadly defining terms in the contract is similarly appropriate. He argues the reasonable expectations doctrine supports this position. Blake points to Omni's ongoing premium payments of $492 as evidence for the proposition that Omni reasonably believed its insurance to cover Davida's use of the Mercedes in California.

Blake's argument misconstrues the reasonable expectations doctrine. As the Kentucky Supreme Court has stated:

> "The rule of interpretation known as the 'reasonable expectations doctrine' resolves an insurance policy ambiguity in favor of the insured's reasonable expectations." The basic thrust of this doctrine is "that the insured is entitled to all the coverage he may reasonably expect to be provided under the policy." Where a person has paid a premium for a policy, the policy should not be read

9

> technically to avoid paying benefits. "Only an unequivocally conspicuous, plain and clear manifestation of the company's intent to exclude coverage will defeat that expectation." This test looks to the reasonableness of what an insured may believe about coverage, and necessarily relies heavily on the facts.

*Ky. Emp'rs Mut. Ins. v. Ellington*, 459 S.W.3d 876, 884 (Ky. 2015) (citations omitted). The doctrine is a rule of interpretation. *True v. Raines*, 99 S.W.3d 439, 443 (Ky. 2003). Under the doctrine, ambiguities in an insurance contract are construed in favor of the reasonable expectation of the insured. *Id*. While the doctrine aims to ensure "policy language will be construed as laymen would understand it," it applies only to ambiguous terms. *Id.* (citation omitted).

Blake emphasizes several facts that may have given Curtis and Sharon the expectation of coverage. The Mercedes was added to the policy in 2007. The endorsement adding the vehicle did not specify a garage location, though some other vehicles on the policy listed a garage location of Bowling Green, Kentucky. Omni renewed the insurance policy in 2008, at which time Selective requested an updated drivers list. Davida's use of the Mercedes began in 2009, after Selective's only request for updated information. By inference, Omni (and its owners) may have simply neglected to add Davida as a driver. While Omni should have updated the drivers list in 2009 if it expected the insurance to cover Davida, it did not do so. This oversight is understandable, if careless, but outside the reasonable expectation doctrine.

The reasonable expectations doctrine is inapplicable because there is no ambiguity in the term "borrow." Even were this Court to conclude the insurance policy were ambiguous, Omni did not "borrow" the Mercedes under either definition analyzed above. As such, the doctrine provides no help to Blake as his definition of borrow is simply outside the lay understanding of that term.

While it may be true that Sharon and Curtis, in their capacities as Omni representatives, thought they were providing coverage to their daughter, this does not comport with the language of the contract. Because the reasonable definition of the term "borrow" does not encompass Davida's use of the Mercedes and the reasonable expectations doctrine does not expand Selective's coverage to include Davida's use of the vehicle, the policy does not cover the accident at issue.

## V.     CONCLUSION

For the foregoing reasons, the Court concludes Curtis Sullivan, Davida D. Sullivan, Sharon Sullivan, and Omni Custom Meats, Inc. are not "insureds" under the Selective Policy. Accordingly, **IT IS HEREBY ORDERED** Selective Insurance Company of South Carolina's Motion for Summary Judgment (DN 63) is **GRANTED. IT IS FURTHER ORDERED** that James Blake's Motion for Partial Summary Judgment (DN 69) is **DENIED.**

**Greg N. Stivers, Judge**
**United States District Court**
September 24, 2015

cc:     counsel of record